UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-12-194 |
| | § | (The Hon. Lynn Hughes) |
| MORRIS ALEXANDER WISE | § | |

## MORRIS WISE'S MOTION TO SUPPRESS

**TO THE HONORABLE LYNN HUGHES:**

**MORRIS ALEXANDER WISE**, Defendant herein, moves this Honorable Court to suppress certain evidence obtained in this case in violation of U.S. CONST. AMEN. IV and XIV and, in support thereof, would show as follows:

### I. Procedural History

Mr. Wise is charged by indictment (the "Indictment") with (1) conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(l) and 841(b)(l)(A)(ii), and (2) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(A)(ii) and 18 U.S.C. § 2. The Indictment was filed on April 3, 2012. Although the Indictment includes 9 co-defendants, the underlying facts related to this Motion are unique to Defendant only.

1

## II. Factual Background

This motion considers whether Morris Wise, a bus passenger, was improperly detained and searched by the Conroe Police Department. On September 15, 2011, Mr. Wise boarded a passenger bus (the "Bus") in Houston, Texas, in route to Chicago, Illinois (Mr. Wise's place of residence). When the Bus made a stop in Conroe, Texas, two officers from the Conroe Police Department's narcotic unit, Detective R. Sanders and Detective J. Sauceda, boarded the Bus and began questioning passengers.[1]

Detective Sanders alleges that, while standing at the front of the Bus, Mr. Wise appeared to be sleeping.[2] After more observation, Detective Sanders further alleges that he concluded that Mr. Wise "was not really asleep" and requested to see his bus ticket.[3] Mr. Wise complied with the detective's request.[4] The ticket identified Mr. Wise as James Smith.[5] Detective Sanders claims he was suspicious of the name James Smith.[6] Detective Sanders alleges that he then asked Mr. Wise if he could search his luggage.[7] Mr. Wise allegedly consented to the search and

---

[1] Conroe Police Report at p. 4 (attached hereto as *Exhibit A*). Defendant certainly does not agree with all of the facts set forth in the Police Report, and is mindful of CrLR 12.2. However, even if the arresting officers' admissible statements from the Police Report are presumed true, such testimony provides sufficient support that the relevant evidence was improperly obtained and should be suppressed.
[2] *Id.*
[3] *See generally*, *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

retrieved a grey duffle bag from the overhead luggage rack.[8] Detective Sanders did not find any contraband in the grey duffle bag.[9]

Detective Sanders alleges that he then inquired about a black backpack—with a lock on it—that also was allegedly located in the overhead luggage rack.[10] Mr. Wise allegedly responded that the black backpack was not his.[11] Detective Sanders claims that he then pulled the backpack out of the luggage rack and asked passengers in the surrounding area if the bag belonged to any of them.[12] According to Detective Sanders, no passenger claimed the backpack.[13] Subsequently, Detective Sauceda allegedly asked other passengers if the backpack belonged to anyone on the Bus.[14] When no one claimed the locked backpack, Detective Sanders and Detective Sauceda allegedly took the black backpack and exited the Bus.[15] After a canine from the Conroe Police Department allegedly indicated that there was contraband inside, the Detectives proceeded to use a bolt cutter to cut the lock off the backpack.[16] A search of the backpack allegedly recovered what appeared to be cocaine.[17]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 10.
[15] *Id.* at 5.
[16] *Id.*
[17] *Id.* Defendant has recently been informed that the drug testing laboratory where the contents of the backpack were sent to be analyzed has been shut down.

Following the search, Detective Sanders admitted that he immediately suspected Mr. Wise.[18] Detective Sanders re-entered the Bus, pointed to Mr. Wise, and allegedly asked him to get off the Bus.[19] Mr. Wise complied.[20] Detective Sanders instructed Mr. Wise to empty his pockets.[21] Mr. Wise complied.[22] The Detectives confiscated the contents of Mr. Wise's pockets, including keys, several cell phones, credit cards, a receipt from a car rental company, and a hotel key.[23] The detectives allegedly determined that the keys fit the lock on the backpack.[24] Mr. Wise was placed under arrest and transported to the Conroe Police Department.[25]

## III. Argument & Authorities

The Fourth Amendment to the U.S. Constitution protects persons from unlawful searches and seizures. It provides, in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. AMEND. IV.

---

[18] *Id*. Detective Sauceda's narrative alleges that a passenger indicated seeing Defendant with the backpack. However, no witness statement was provided in support of this allegation.
[19] *Id*.
[20] *Id*.
[21] *Id*. at 5.
[22] *Id*.
[23] *Id*. at 11.

In order to protect these interests and properly limit sovereign action in the area of search and seizure, the Supreme Court created an exclusionary rule that, when applicable, requires the suppression of evidence obtained in violation of the Fourth Amendment. *See Weeks v. U.S.*, 232 U.S. 383 (1914). A warrantless search is per se unreasonable unless the government can demonstrate that it falls within one of a carefully defined set of exceptions to the Fourth amendment's warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 474-475 (1971). The government has the burden of proving the lawfulness of a warrantless search and seizure. *Mincey v. Arizona*, 437 U.S. 385, 390-91 (1978). Here, Mr. Wise's Fourth Amendment rights were violated by an illegal search and seizure. Accordingly, the evidence illegally seized from the Mr. Wise's person (*i.e.*, the set of keys, cell phones, and all other items in Mr. Wise's pockets) and all other evidence flowing therefrom should be excluded as "fruit of the poisonous tree." *U.S. v. Fike,* 449 F.2d. 191, 193 (5th Cir. 1971).

### A. Mr. Wise has Standing

Mr. Wise has standing to challenge the officers' illegal search and seizure of his person. An accused has standing to claim the protections of the Fourth Amendment when they "ha[ve] a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A subjective expectation of

---

[24] *Id.*
[25] *Id.*

privacy is legitimate if it is "one that society is prepared to recognize as 'reasonable,'" *Id*.

Mr. Wise had a legitimate expectation of privacy in the contents of his pockets. Mr. Wise did not abandon or suggest that he did not own the contents of his pockets.[26] Mr. Wise was wearing all black clothing and the contents of his pockets were hidden – evidencing his expectation of privacy in the contents of his pockets.[27] Moreover, an expectation of privacy in one's pockets is not unreasonable. Consequently, Mr. Wise has standing to challenge the Officers' illegal search and seizure.

### B. Mr. Wise Was "Seized" For Fourth Amendment Purposes.

In order to determine whether a person's Fourth Amendment rights have been violated, this Court must first decide if that person was "seized" within the meaning of the Fourth Amendment.

The Supreme Court has consistently held that not all police encounters constitute a "seizure" under the Fourth Amendment. *Fla. v. Bostick*, 501 U.S. 429, 434 (1991). "A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen. Such encounters are deemed consensual 'so long as a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id*. at 434 (quoting *California v. Hodari D.*, 499 U.S.

---

[26] *Id*. at 5.
[27] *Id*. at 4.

621(1991)). Thus, the standard for determining whether a "seizure" has occurred is whether a reasonable person would feel free to leave. *Id*. "As in all cases involving a determination of whether a "seizure" has occurred for Fourth Amendment purposes, the particular encounter is assessed by looking at the totality of the circumstances." *Id.* at 439. Even "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *INS v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotations omitted).

Against this backdrop, Mr. Wise was "seized" within the meaning of the Fourth Amendment by Detective Sanders at the moment the detective allegedly pointed to the Mr. Wise and directed him to "get off the bus."[28] In *U.S. v. Mendenhall*, the Supreme Court wrote, "Examples of circumstances that might indicate a seizure, even when the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. 544, 554 (1980).

---

[28] *See Id*. and Motion to Reduce Bond at 57(Cited pages attached hereto as *Exhibit B. A full copy is available upon request.)*

A number of those factors are present here. Not only did Detective Sanders' presumed tone convey to Mr. Wise that his compliance was required, but the entire bus was privy to the canine drug search that yielded drugs because the passengers watched it occur less than 20 feet from the bus.[29] At this point, there were three detectives and one uniformed officer — presumably with a gun in plain view— waiting outside the bus.[30] Under these circumstances, a reasonable person would conclude that he was required to cooperate with the detectives' investigation, or worse, was under arrest. To compound matters, the detectives gave Mr. Wise no indication that he could refuse to get off the bus, to answer their questions, to empty his pockets, or to hand over his keys.[31]

Relying on the Court's reasoning in *Mendenhall*, and looking at the totality of the circumstances, Mr. Wise was "seized" for purposes of the Fourth Amendment.

### C. The Seizure Was Unreasonable.

After a determination by the Court that a seizure has occurred, its next inquiry is whether or not the seizure was justified. The standard for determining whether a seizure is justified was articulated by the Supreme Court in *Reid v. Georgia*, explaining that "any curtailment of a person's liberty by the police must be supported by at least a reasonable and articulable suspicion that the person

---

[29] *See* Conroe Police Report at 4 and Motion to Reduce Bond at 32.
[30] *See* Conroe Police Report at 8.

seized is engaged in criminal activity." 448 U.S. 438, 440 (1980). In assessing whether a given set of facts constitutes reasonable suspicion, this Court must determine whether the facts collectively establish reasonable suspicion. *Id.* "The totality of the circumstances—the whole picture—must be taken into account." *U.S. v. Cortez*, 449 U.S. 411, 417 (1981).

Here, there was no reasonable and articulable suspicion that Mr. Wise was engaged in criminal activity when he was "seized" under the Fourth Amendment. To detain Mr. Wise, Detective Sanders relied upon the following facts: (a) Mr. Wise was allegedly trying to fall asleep (Detective Sanders described it as Mr. Wise acting nervous); (b) Mr. Wise's name was James Smith; and (c) the backpack containing narcotics allegedly was in a luggage rack near Mr. Wise.[32] These facts are insufficient to establish Mr. Wise was engaged in criminal activity.

Detective Sanders states in his report that Mr. Wise trying to sleep on the bus constituted a "nervous action[]."[33] The proposition that someone trying to sleep on a Greyhound bus at 8:00 a.m. while traveling over 19 hours to Chicago is an indicia of acting "nervous" or engaging in criminal activity is a clear overreach. It is quite common for passengers to sleep on long bus rides. Likewise, the detectives allegedly did not announce their presence when they initially boarded, did not indicate why they were on the Bus, and did not reveal who they were.

---

[31] Motion to Reduce Bond at 57.
[32] Conroe Police Report at 4.

9

Accordingly, it would be impossible to conclude that Mr. Wise was "nervous" about the detectives' presence on the Bus.

There is no objective basis that James Smith was an alias, other than Detective Sanders' contention that it is a "generic" name. In *U. S. v. Umphryes*, a court found that an officer's hunch that a generic name was an alias did not support a finding of reasonable suspicion. 2010 U.S. Dist. LEXIS 39106, at *10 (E.D. Mich. March 19, 2010) ("Defendant gave the name of 'Timothy Johnson' which Trooper Stokes described as being a 'generic' or common name. Based on some unarticulated aspect of his experience Trooper Stokes believed that to be a false name. While the hunch of Trooper Stokes turned out to be accurate, as of the time of the pat-down it was only a hunch and therefore did not add much to the reasonable suspicion question.").

Like that of the officer in *Umphryes*, Detective Sanders' feeling that "James Smith" was a fake name was nothing more than a hunch. Detective Sanders did not ask to see Mr. Wise's identification on the Bus and, therefore, was in no position to think "James Smith" was anything more than Mr. Wise's given name when he seized; regardless, it certainly does not suggest that Mr. Wise was involved in criminal activity.[34] Accordingly, this Court should give very little weight, if any,

---

[33] *Id*.
[34] *Id*. and *see generally,* Motion to Reduce Bond at 58.

to this fact when determining whether the totality of the circumstances gives rise to reasonable suspicion.

Finally, the alleged proximity of Mr. Wise to the backpack in the overhead luggage rack does not in indicate that Mr. Wise was engaged in criminal activity. The back pack was neither on Mr. Wise's person, nor in or under his seat. Moreover, Mr. Wise expressly disclaimed ownership or recognition of it.[35] There were people located all around Mr. Wise—any of whom could have owned the backpack.[36] Further, there was no identification on or in the backpack, and the backpack was never claimed by anyone.[37] The facts surrounding the ownership of the backpack at the time of the Mr. Wise's seizure are too attenuated to support a reasonable suspicion that Mr. Wise owned the backpack or was involved in transporting drugs. In other words, there were no independent factors tying Mr. Wise to the illegal contraband in the backpack.

The facts must raise a reasonable articulable suspicion that Mr. Wise was engaged in illegal behavior. *See Reid*, 448 U.S. at 440. Proximity to an abandoned backpack, an allegedly "generic name", and sleeping on a bus are not enough to raise such a suspicion. Thus, Detective Sander's seizure of Mr. Wise was unreasonable under the Fourth Amendment, and any evidence obtained from the unreasonable search should be suppressed.

---

[35] Conroe Police Report at 4.
[36] *Id.*

11

## D. A Pat Down of Morris Wise Was Not Justified Under *Terry*

If this Court determines that Officer Sander's search and seizure of Mr. Wise constituted an investigative stop, the contents of Mr. Wise's pockets should still be suppressed because Officer Sander's pat down was outside the scope of a *Terry* stop and, thus, unconstitutional.

As a general rule, officers may not search or seize an individual without an arrest warrant, search warrant, or probable cause. Courts, however, have made an exception to this rule. Under certain limited circumstances, police officers may stop or seize an individual "for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

In this case, the search of Mr. Wise was not justified under *Terry*. An officer may only conduct an investigatory detention and protective pat down when he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is detaining may be armed and presently dangerous. . . ." *Id.* at 30. Thus, the inquiry under *Terry* is divided into two parts and each part must be met for the detainment to be constitutional: "First the officer must be justified in initially detaining the person. A detention is lawful when it is supported by specific and

---

[37] *Id.* at 4-5.

articulable facts that reasonably warrant the intrusion. Second, to justify a pat down an officer must be able to point to specific articulable facts suggesting that the individual presented a risk of harm to the officer or to others." *U.S. v. Campbell*, 942, F.2d 890, 892 (5th Cir. 1991).

Under the first prong of the *Terry* test, Detective Sanders, as discussed previously, did not have reasonable suspicion to detain Mr. Wise.

As to the second prong of the *Terry* test, the Supreme Court has held that a frisk is appropriate when the officer fears that the suspect is armed and poses a danger to the officer or others. *Terry*, 392 U.S. at 24. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. at 27.

There are no facts that support that Mr. Wise was a danger to the detective or those around him. Mr. Wise had acquiesced to all of the detective's requests up to this point. Mr. Wise was not behaving in an erratic or dangerous manner. Further, Mr. Wise had not assaulted or threatened anyone; nor is there any indication that the detective saw a weapon or something that looked like it could be a weapon on Mr. Wise. Detective Sanders stated, in the police report, that he "asked [Mr. Wise] to empty his pockets for [his] safety and to ensure that he was

not carrying a weapon."[38] Although Detective Sander's did not physically perform a protective frisk on Mr. Wise; his request for Mr. Wise to empty his pockets is equivalent to a *Terry* pat down. *See U. S. v. Reyes*, 349 F.3d 219, 225 (5th Cir. 2003) ("[The police officer's] request that defendant empty his pockets and lift his shirt" qualified as a *Terry* pat down). Detective Sanders had no right to frisk Mr. Wise under these circumstances.

Moreover, the Supreme Court explained "that for a Terry pat down to survive constitutional scrutiny, it must be 'strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 26). In other words, the officers' actions must not exceed the permissible scope of the stop. *U.S. v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999). In *U.S. v. Holmes*, the Court unequivocally stated that "a police seizure of items that are neither weapons nor apparent contraband during a *Terry* patdown exceeds that doctrine's limited exception of the Fourth Amendment's prohibition on warrantless searches and seizures." 505 F.3d 1288, 1292, (D.C. Cir. 2007).

*Holmes* involved officers performing a *Terry* patdown on a suspect and removing a set of keys from the suspect's pocket. *Id*. at 1291. The officers questioned the suspect about the keys and determined that the suspect's car was in

---

[38] *Id*.

the vicinity and requested to search his car. *Id*. The officer's search of the suspect's car revealed an unlicensed pistol in violation of his parole. *Id*. The Court in this case determined that the seizure of the keys violated the suspect's Fourth Amendment rights and granted his motion to suppress.

Likewise, the seizure of Mr. Wise's keys and cell phones in this case was outside the scope of the *Terry* doctrine. When an officer conducts a legitimate *Terry* stop, the officer "who discover[s] contraband other than weapons . . . cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression." *Michigan v. Long*, 463 U.S. 1032, 1050 (1983). However, in this case, there is no suggestion that the keys confiscated from Mr. Wise constituted either a weapon or contraband; therefore, the detective had no right to take them from Mr. Wise.

Each prong of the *Terry* test must be satisfied in order justify an investigative detention and pat down. Under these facts, neither prong was met. Therefore, the detectives detained and searched Mr. Wise in violation of the Fourth Amendment and no evidence obtained from this search should be admitted because it is "fruit of the poisonous tree."

### E. **The Unlawfully Obtained Evidence Must be Suppressed.**

As explained above, the evidence in this case—namely, the set of keys, the cell phones, the credit cards, and all other evidence in Mr. Wise's pockets — were

obtained in violation of the Fourth Amendment.  Not only did the detectives lack reasonable suspicion to seize Mr. Wise, but also there were no facts suggesting that the Mr. Wise was armed or dangerous, or that anything confiscated from Mr. Wise constituted a weapon or contraband.  Accordingly, any evidence obtained as a result of the unconstitutional search and seizure must be suppressed.  *Wong Sun v. U. S.*, 371 U.S. 471, 484 (1963).

## IV. <u>Conclusion</u>

For these reasons, Defendant, Morris Alexander Wise, respectfully requests the Court grant this Motion to Suppress.

Respectfully submitted,

 /s/ John B. Kinchen
John B. Kinchen
Attorney-in-charge
  Texas Bar No. 00791027
  S.D. Texas Bar No. 18184
HUGHES ARRELL KINCHEN LLP
Norfolk Tower
2211 Norfolk, Suite 1110
Houston, Texas 77098
Telephone:  713-403-2064
Facsimile:   713-583-8877
jkinchen@hakllp.com

## CERTIFICATE OF CONFERENCE

On the 17th day of December, 2012, the undersigned counsel consulted with Assistant U.S. Attorney Ralph E. Imperato via email regarding this Motion to Suppress. Assistant U.S. Attorney Ralph E. Imperato indicated that the government was opposed to the Motion.

/s/ John Kinchen
John Kinchen

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2013, I electronically filed the above Motion to Suppress, and an electronic notification of the same was sent to Assistant United States Attorney Ralph E. Imperato.

/s/ John Kinchen
John Kinchen